**EXHIBIT 1**



J. Michael Sutherland
Of Counsel
214-855-3069
msutherland@ccsb.com

May 31, 2024

*By U.S. First Class Mail and*
*By Email to: cshield@slawlit.com*

Christopher A. Shield
Shield Law, PLLC
1810 Southmore Blvd., Suite 300
Houston, TX 77004

Re: Your further letter of May 23, 2024 regarding Patterson+Sheridan LLP / *Continuity Controls, LLC*; Case No. 23-10690; Bankr. W.D. Tex.

Mr. Shield:

Neither applicable law nor any available evidence suggests that the Patterson+Sheridan LLP law firm (the "Firm") is or has been an insider as to its clients. This is the case whether only the per se parties expressly referenced in 11 U.S.C. §101(31) are considered or whether other parties are also analyzed under the statute's non-exclusive language. "There is nothing to suggest abuse or control by the attorneys, nor is there any reason to suspect any affinity beyond an arms-length professional relationship that was motivated by something other than the ordinary course of business. *In re Premiere Network Services, Inc.*, 333 B.R. 126, 129 (Bankr. N.D. Tex. 2005, citing *In re Three Flint Hill Ltd. Partnership,* 213 B.R. 292, 300-01 (D.Md. 1997)., *In re Friedman*, 126 B.R. 63, 70 (9th Cir. BAP 1991).) Moreover, "the case least subject to scrutiny is one where the attorney is not debtor's bankruptcy counsel. *Id*. at 130 (referencing *In re Dunes Hotel Associates*, 194 B.R. 994 (Bankr.D.S.C.1995)). Here, the Firm was not Continuity Controls's bankruptcy counsel. Rather, the Firm first assisted with responding to a subpoena and then with responding to a lawsuit. The actions at issue in the lawsuit had, as alleged, occurred before the Firm was engaged. Other counsel represented Continuity Controls as bankruptcy counsel; not the Firm, as the Firm had by then withdrawn. Whether your insinuations would be viewed by any court as sufficient to survive a motion to dismiss under Rule 12 Fed. R. Civ. P. (as adopted by Bankruptcy Rule 7012) remains to be seen, but they do not meet the standards of *Premiere* or other similar cases.

Your statement that retainer funds held by the Firm were somehow not the Firm's collateral is simply incorrect – factually and legally. Under Texas law, a security interest attaches when value has been given (including a promise to provide services), the debtor has rights in the collateral or power to transfer rights in the collateral, and the collateral is "in the possession of the secured

Christopher A. Shield
May 31, 2024
Page 2

party." Tex. Bus. & Comm. Code § 9.203(b)(1)-(3)(B); *see Franklin Nat. Bk. v. Boser*, 972 S.W.2d 98, 102 (Tex.App.—Texarkana 1998, pet. denied) (applying TBCC § 9.203(b), lender perfected security interest where debtor had rights to collateral, parties signed agreement providing security interest, and lender gave value for same). The same result is also found in bankruptcy cases. *See In re Ozcelebi*, 631 B.R. 629, 645 (Bankr. S.D.Tex. 2011) (bankruptcy court, applying TBCC § 9.203(b), found law firm had security interest in debtor's estate funds that were prepetition retainer held in firm's trust account in exchange for promise to provide legal services). The Firm and the Debtor had a "security retainer" agreement functionally identical to the one in *Ozcelebi*. Use or non-use of the word "collateral" is immaterial and belies a misapprehension of the requirements of Section 9.203. The existence of an agreement "containing a description of the collateral" is but one of four possible means for satisfying the third element for attachment of a security interest, with the second possible means being simple possessions. TEX. BUS. COMM. CODE § 9.203(b)(3)(A)-(D). By the terms of the agreement, the Firm accepted funds into its retainer account in exchange for the promise to provide legal services and draw down on the retainer in payment of same. *See id.* at 643-44 (under "security retainer" agreement, "a debtor pays counsel for prospective services" and counsel holds the funds in trust "until the provision of services") (citing *Barron v. Countryman*, 432 F.3d 590, 592 (5th Cir. 2005)). So, even viewed as property of a bankruptcy debtor's estate, the Firm held a perfected security interest in the funds in question and had fully earned the funds it drew from the trust account. As noted in our prior letter, a creditor with a validly perfected security interest cannot be liable for preference for paying down a debt from its own collateral. And, among other things, your quotation that any "remaining balance of any retainer will be refunded to the Client upon satisfaction of any outstanding bills" ignores the fact that the retainer was completely exhausted pre-petition while the Firm was still owed a sizeable amount.

Your statement that the Firm "has not provided copies of Continuity Controls' records in the possession of" the Firm presumes both that the purported assignment of Chapter 5 causes of action is valid and that the Trustee's rights as successor to the attorney / client privilege of the corporate Debtor is also assignable. Neither of those propositions are fully and finally settled and, for sake of preservation, both premises are contested here. Whether you or your client have effectively acquired any rights from the Trustee, your client is certainly not a successor client vis a vis the Firm. Nonetheless, rather than making these items battlegrounds at this time, the Firm is assembling its files and will make those available to the duly appointed Chapter 7 Trustee, who then may or may not elect to provide those to you in his discretion, if he so chooses. We presume he will do so but, in our book, the privilege and rights of a client or successor client still rest with the Trustee.

Your attempt to impose a 10-day edict for the production of materials is unreasonable under the circumstances and in the face of your current and prior threats of litigation. Inasmuch as you and your client are not a client of the Firm and since you have put things on a footing of threatened litigation, production at this time will be to the Trustee, as stated above, and will be made in the ordinary course of the Firm's business.

Christopher A. Shield
May 31, 2024
Page 3

You state that you do not wish to engage in a battle of "we are right, you are wrong letters," although the unsupportable stances taken in your letters to date suggests otherwise. However, we do not want that either. You have made only gossamer allegations and extraordinarily excessive demands / settlement offers. You have now rejected our prior counteroffer. Although we are inclined to explore ways to have a meaningful dialogue about finding a modest, nuisance settlement, your prior demands to date are simply out of range for that to occur. If you'd like to have a more meaningful, rational discussion, please contact me this next week.

                                             Sincerely,

                                             J. Michael Sutherland

cc:      Jerry Selinger, Patterson+Sheridan

i_11731247v.1